

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: CINCINNATI INSURANCE COMPANY
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                                                  MDL No. 2962

ORDER DENYING TRANSFER

**Before the Panel:** At its July 2020 hearing session, the Panel considered two motions seeking centralization of an industry-wide litigation involving claims for insurance coverage of business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses. We denied the motions, concluding that the differences among the many insurers would overwhelm any common factual questions and hinder the transferee court's ability to efficiently manage the litigation. *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, 2020 WL 4670700, __ F. Supp. 3d __ (J.P.M.L. Aug. 12, 2020). In the briefing on those motions, several parties proposed that insurer-specific MDLs be created. We concluded that we needed "a better understanding of the factual commonalities and differences among these actions, as well as the efficiencies that may or may not be gained through centralization, before creating an insurer-specific MDL." *Id.* at *3. Therefore, we ordered the Panel Clerk to issue orders directing the parties to certain actions involving a common insurer or group of insurers to show cause why those actions should not be centralized.

One of those orders encompassed the seventeen actions listed on Schedule A,[1] which involve claims against Cincinnati Insurance Company and related insurers (collectively, Cincinnati). Since we issued this show cause order, the parties have notified us of 49 related actions. Plaintiffs in 27 of these 66 actions support the creation of a Cincinnati MDL. They variously suggest a number of potential transferee districts, including: the Northern District of Illinois; the District of Kansas; the Western District of Missouri; the District of New Jersey; the Southern District of New York; the Southern District of Ohio; the Eastern District of Pennsylvania; and the Western District of Pennsylvania. Plaintiffs in five actions oppose centralization, as does Cincinnati and several non-insurer co-defendants in a related action pending in the Eastern District of Missouri. In the alternative, Cincinnati suggests that the Northern District of Alabama or the Southern District of Ohio serve as the transferee court for this litigation. Additionally, we received two briefs by amici curiae, one in support of and one in opposition to centralization.

---

[1] An eighteenth action on the show cause order, filed in the Northern District of Illinois, subsequently was dismissed.

-2-

After considering the arguments of counsel,[2] we conclude that centralization of the Cincinnati actions will not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. Centralization of these actions presents a close question. The insurance policies at issue in the Cincinnati actions appear to use standard forms drafted by the Insurance Services Office (ISO) and will involve the interpretation of common language, such as "direct loss to property." To the extent discovery is necessary of Cincinnati regarding the drafting and interpretation of its policies, such discovery will be common to all actions. Thus, these actions present common legal and factual questions that could, in other circumstances, support centralization.[3]

Common factual questions, however, are not the sole prerequisite for centralization under Section 1407. Centralization also must promote the just and efficient conduct of the actions. This litigation demands efficiency. As counsel repeatedly emphasized in their papers and during oral argument, time is of the essence in this litigation. Many plaintiffs are on the brink of bankruptcy as a result of business lost due to the COVID-19 pandemic and the government closure orders. The most pressing question for us, therefore, is whether centralization presents the most efficient means of advancing these actions towards resolution.

Efficiency here is best obtained outside the MDL context. If these actions were centralized, the transferee court would have to establish a pretrial structure to manage numerous plaintiffs, many of which are pursuing distinct theories of liability.[4] The court also would have to identify common policies with identical or sufficiently similar policy language and interpret those policies under applicable state laws. The Cincinnati actions are pending in 29 different districts in nineteen states.

---

[2] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of September 24, 2020. *See* Suppl. Notice of Hearing Session, MDL No. 2962 (J.P.M.L. Sept. 8, 2020), ECF No. 124.

[3] Cincinnati argues that centralization is inappropriate for the handling of purely legal questions, such as policy interpretation questions. It is true that common legal questions, standing alone, are not sufficient to satisfy Section 1407's requirement that there be common factual questions. *See In re ABA Law School Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2018). Centralization may be appropriate even where legal questions are prominent, however, so long as common factual issues are present. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("The Panel must determine the extent of the common factual issues and the likelihood that centralized pretrial proceedings will create important efficiencies, avoid inconsistent rulings, and result in the overall fairer adjudication of the litigation for the benefit of all involved parties.").

[4] For instance, some plaintiffs argue that the COVID-19 virus is present on and caused damage to their properties. Others allege that they suffered damage as a result of state and local governments' orders restricting or closing businesses. Some plaintiffs principally seek damages for breach of contract; others assert claims for bad faith denial of insurance. These distinct claims likely will require different legal analysis and different discovery.

-3-

It will take a not insignificant amount of time to organize this litigation and resolve the central policy interpretation questions. In the meantime, dispositive motions addressing the core policy interpretation questions are pending in 39 of the 66 actions, at least twelve of which are fully briefed. Rather than have one judge attempt to organize and resolve the core policy interpretation issues, it strikes us that allowing the various transferor courts to decide these questions will result in quicker and more efficient resolution of this litigation.

Furthermore, should plaintiffs' claims survive dispositive rulings on the policy interpretation questions,[5] discovery appears relatively straightforward. While some of this discovery may well be common (particularly that directed to Cincinnati regarding the drafting and interpretation of its policy language), much of the discovery will be plaintiff- and property-specific. In these circumstances, it is more likely the actions will reach an expeditious resolution if they remain in the transferor courts. We impress upon the courts overseeing these actions the importance of advancing these actions towards resolution as quickly as possible.

Accordingly, centralization of the actions listed on Schedule A is not warranted. To the extent necessary, alternatives to centralization are available to minimize any duplication in pretrial proceedings, including informal cooperation and coordination among the parties and courts. We also note that some similar actions are pending in the same district before multiple judges, and it may be appropriate for the courts or the parties to seek to relate those before one judge.

---

[5] We take no position on the merits of these dispositive motions. *See In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1339–40 (J.P.M.L. 1972) ("The framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations."). To date, one court has denied two motions to dismiss with respect to Cincinnati, *see Studio 417, Inc. v. Cincinnati Ins. Co.*, C.A. No. 6:20-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), while another has granted dismissal, *see Sandy Point Dental, PC v. Cincinnati Ins. Co.*, C.A. No. 1:20-02160, 2020 WL 5630465 (N.D. Ill. Aug. 21, 2020).

-4-

IT IS THEREFORE ORDERED that the order to show cause regarding the actions listed on Schedule A is vacated.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Ellen Segal Huvelle          R. David Proctor
Catherine D. Perry           Nathaniel M. Gorton
Matthew F. Kennelly          David C. Norton

IN RE: CINCINNATI INSURANCE COMPANY
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                               MDL No. 2962

# SCHEDULE A

Middle District of Alabama

EAGLE EYE OUTFITTERS, INC. v. THE CINCINNATI CASUALTY COMPANY,
    C.A. No. 1:20–00335
PEAR TREE GROUP, LLC v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 3:20–00382
SNEAK & DAWDLE, LLC v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 3:20–00383
AUBURN DEPOT LLC v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 3:20–00384

Northern District of Alabama

HOMESTATE SEAFOOD LLC v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 2:20–00649
SOUTHERN DENTAL BIRMINGHAM LLC v. THE CINCINNATI INSURANCE
    COMPANY, C.A. No. 2:20–00681

Northern District of Illinois

3 SQUARES, LLC, ET AL. v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 1:20–02690
DEREK SCOTT WILLIAMS PLLC, ET AL. v. THE CINCINNATI INSURANCE
    COMPANY, C.A. No. 1:20–02806

District of Kansas

PROMOTIONAL HEADWEAR INT'L v. THE CINCINNATI INSURANCE
    COMPANY, INC., C.A. No. 2:20–02211

Western District of Missouri

STUDIO 417, INC. v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 6:20–03127

-A2-

Southern District of Ohio

TROY STACY ENTERPRISES INC. v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 1:20–00312
TASTE OF BELGIUM LLC v. THE CINCINNATI INSURANCE COMPANY, ET AL.,
    C.A. No. 1:20–00357
SWEARINGEN SMILES LLC, ET AL. v. THE CINCINNATI INSURANCE
    COMPANY, ET AL., C.A. No. 1:20–00517

Eastern District of Pennsylvania

MILKBOY CENTER CITY LLC v. THE CINCINNATI INSURANCE COMPANY,
    ET AL., C.A. No. 2:20–02036
STONE SOUP, INC. v. THE CINCINNATI INSURANCE COMPANY,
    C.A. No. 2:20–02614

Western District of Pennsylvania

HIRSCHFIELD-LOUIK v. THE CINCINNATI INSURANCE COMPANY, ET AL.,
    C.A. No. 2:20–00816

Southern District of West Virginia

UNCORK AND CREATE LLC v. THE CINCINNATI INSURANCE COMPANY,
    ET AL., C.A. No. 2:20–00401